Overseers of the Poor of Donegal Township, Plffs. in Err., *v.* Overseers of the Poor of Sugarcreek Township.

A pauper, born where her father and mother had at the time a legal settlement, retains that settlement on becoming of age, although during her minority her father deserts her mother (but is not shown to have obtained another settlement), and, her mother having procured a divorce and remarried, afterward removes with her to the township where the second husband resides.

If after attaining her majority the pauper continues to reside in her mother's family she does not thereby lose her original settlement.

The commitment of the pauper to an insane asylum by the overseers of the township in which the mother resides does not affect the settlement.

Such a commitment does not bring the case within § 23 of the act of June 13, 1836, so as to prevent the subsequent removal of the pauper to the place of her settlement in accordance with §§ 16 and 18 of the act.

---

Cited in Poor District v. Poor District, 7 Kulp, 196, 198.

NOTE.—For the effect of the remarriage of the mother after desertion, see note to Northumberland v. Milton, 6 Sad. Rep. 503.

The portions of the act of June 13, 1836 (P. L. 541), to which reference is made are as follows:

Sec. 16.—On complaint made by the overseers of any district to one of the magistrates of the same county, it shall be lawful for the said magistrate, with any other magistrate of the county, where any person has or is likely to become chargeable to such district into which he shall come, by

Section 23 of the act was intended to provide for cases of sudden emergency,—sudden sickness, injury or death, and the like.

Under §§ 16 and 18 a constructive transfer from one district to the other, by delivery of the order of removal, is sufficient where actual removal of the pauper is impracticable.

(Argued October 13, 1887.   Decided October 24, 1887.)

October Term, 1887, No. 228, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Quarter Sessions of Armstrong County to review a judgment dismissing an appeal from an order for the removal of an insane pauper.   Affirmed.

Upon entering the judgment the court below, NEALE, P. J., filed the following opinion:

In the matter of the appeal of the overseers of the poor of Donegal township from an order of removal of February 18, 1885, removing Emma Wolford from Sugarcreek township,

---

their warrant or order, directed to such overseers, to remove such person, at the expense of the district, to the city, district, or place where he was last legally settled, whether in or out of Pennsylvania, unless such person shall give sufficient security to indemnify such district to which he is likely to become chargeable as aforesaid.

Sec. 18.—It shall be the duty of the guardians or overseers of the city or district to which such poor person may be removed, by warrant or order as aforesaid, to receive such poor person; and if any such guardian or overseer shall refuse or neglect so to do, he shall forfeit for every such offense the sum of $20, to be recovered as hereinafter provided, and applied to the use of the poor of the district from which such poor person may be removed as aforesaid.

Sec. 23.—If any person shall come out of any city or district in this commonwealth, into any other district, and shall happen to fall sick or die before he have gained a settlement therein, so that he cannot be removed, the overseers of such district shall, as soon as conveniently may be, give notice to the guardians or overseers of the city or district where such person had last gained a settlement, or to one of them, of the name, circumstances, and condition of such poor person; and if the guardians or overseers to whom such notice shall be given shall neglect or refuse to pay the moneys expended for the use of such poor person, and to take order for relieving and maintaining him, or, in case of his death before such notice could be given, shall, on request made, neglect or refuse to pay the moneys expended in maintaining and burying such poor person, in every such case it shall be the duty of the court of quarter sessions of the county where such poor person was last settled, upon complaint to them made, to compel payment by such guardians or overseers, of all such sums of money as were necessarily expended for such purpose, in the manner directed by law in the case of a judgment obtained against overseers.

Armstrong county, Pa., to Donegal township, Butler county, the facts, as nearly as can be gathered from the evidence, are as follows:

Prior to the year 1855, Andrew Wolford and Mary Ann Wolford, his wife, were living and had their legal settlement in Donegal township, Butler county, where they were duly domiciled and resided. The name of the wife before her marriage was Mary Ann Fair. During their coverture they had more than one child, and one of the children born to them was Sarah Emma Wolford, who was born while they, the parents, were living on the farm known as the Stewart farm in Donegal township, which had been purchased by Wolford from one Stewart in 1855. According to the testimony of one witness, Sarah Emma was born in the year 1855, but the mother swore that she was born in 1857, December of that year. Subsequent to the birth of this child, who is now the subject of this controversy, Andrew Wolford continued to reside upon the same land until 1862 or 1863; and altogether he lived with his family in Donegal township about fourteen or fifteen years, in that time being the owner of some two tracts of land on which he had dwelt.

About the year 1862 or 1863, the husband, Andrew Wolford, gave notice to his wife that he could not live with her longer; and, doubtless in pursuance of an arrangement with a former housemaid, he departed from the neighborhood, the housemaid, Mag McDermott, disappearing at about the same time. He then abandoned his wife and family and never returned to live with them or took any further care of them afterward. After his departure, at what particular time it does not appear, the farm was sold at sheriff's sale and bought in at a nominal sum of $100 by the brother-in-law of Mrs. Wolford under an arrangement with her by which she was to have some advantage on a sale, which she did afterwards have, getting in all something over $1,000. Afterwards this money was used in the purchase of a farm in Washington township, Armstrong county, which Mrs. Wolford bought from Ellenberger, which she sold to Foster. She then appears to have used the proceeds of this sale in buying a piece of land in Fairview township, Butler county, which she again sold. The proceeds, about $1,250, were then loaned to —— Devinney, her late husband.

Mrs. Wolford appears to have lived on the Washington township farm for about three years, and Sarah Emma then lived

with her.   She also lived about the same length of time on the Fairview township farm, where Sarah Emma also lived with her.   In October, 1884, she bought the land in Sugarcreek township, Armstrong county, for which she paid $1,000, and moved onto it in April, 1885.   Sarah Emma appears to have lived out at times but made her home with her mother or in Devinney's family.

Mrs. Wolford appears to have remained in the neighborhood of her former home for some years afterwards, and received visits from her husband, Wolford; but they never seem to have cohabited after the first separation, and neither appears to have suffered much mental anguish on that account.   The husband made overtures of resuming marital relations with his wife in case anything should happen his paramour, which she refused to acquiesce in.   He then departed for good.   After leaving his wife he adopted the name of Andrew Hershey, and was seen and recognized afterwards by different persons, and was generally known as Andrew Hershey.   In 1870 he bought a piece of land in Shaler township, Allegheny county, worth some $2,500, to which he afterwards derived title; a house was built on this land by James Roach for Wolford or Hershey about 1879 or 1880.

R. H. Roach says he lived on the land in Shaler township ever since the house was built.   He died in February, 1884.   There is no positive testimony that Wolford or Hershey was ever married to any other than the mother of the said Sarah Emma Wolford, although he was living with the McDermott woman in the Shaler township house previous to his death.

Mrs. Wolford, after the separation, procured a divorce from her husband and then married Devinney, with whom she lived in Sugarcreek township until his death, it would seem, on the land of Devinney.

Papers are also in evidence showing the assessment to Andrew Hershey of 28 acres of land in Shaler township, valued at $2,-240; two-story frame house, $500; and horse, $50, for the years 1882, 1883, 1884; also receipts for taxes for 1883 and 1884; and a paper not in evidence shows payment of taxes by Andrew Hershey in Shaler township for the years 1881–1883.

It also appears that in the year 1883 the pauper, Sarah Emma, was declared a lunatic, and was confined in the hospital at Dixmont, where she has continued to remain.   It is in evidence that at the time the order of removal was taken out she was not

discharged from the hospital, but was there at the time; consequently, there was no actual delivery of the pauper in person to the overseers of Donegal township.

From these facts it is clear and we now find that the said Sarah Emma Wolford, at the time of her birth, acquired an actual settlement in Donegal township, Butler county, by virtue of the then actual settlement of her parents in that township at the time.

We further find that up to the removal of the mother from that township she was still a minor, and had until that time derived no other settlement; which would be conclusive as to the request of the first point of the defendant (or appellee) ; and that point is, therefore, affirmed. Montoursville v. Fairfield Twp. 112 Pa. 105, 3 Atl. 862; Wayne Twp. v. Jersey Shore, 81* Pa. 264.

But the appellants' counsel would, at the very threshold of this case, have it dismissed, for the reason that it is distinctly within the 23d section of act of June 12, 1836 (Purdon, 1349, pl. 59). We fail to find throughout the testimony any evidence to support the theory of a sudden falling sick or emergency as contemplated in that section. Two years prior to these proceedings the pauper had been declared insane and was duly committed to the hospital, and at that time she had been some years a resident of Sugarcreek township.

In such a case, if the place of actual legal settlement had been known, the order of removal of the pauper to her proper district might have preceded proceedings *de lunatico inquirendo.* But it so frequently happens that in such cases the actual settlement of the alleged pauper may not at once be known, that if these proceedings in lunacy would have to be postponed until the place of legal settlement were determined much harm might result; so that we deem it entirely right to have postponed the ascertainment of the legal settlement of the pauper until after the inquiry of lunacy had taken place. The first duty dictated by both humanity and public safety was clearly to provide for the care and custody of the unfortunate lunatic. Having done so in this instance, we think the position of the appellant is untenable,—that the order of removal was invalid because there was no actual delivery of the pauper at the time of the service of the order of removal upon them. *Re* Blewitt, 11 Phila. 652.

The overseers, therefore, performed their duty, after having

reason to believe that the township of Donegal was the place of the last legal settlement of the pauper, to obtain an order of removal to that township, which was the course taken in the case of Sugarloaf Twp. v. Schuylkill County, 44 Pa. 481, afterwards remedied in respect to jurisdiction by the act of April 15, 1867. See Blair County v. Clarion, 91 Pa. 433; and Harmony Twp. v. Forest County, 91 Pa. 406.

We have thus covered the ground embraced in the first, second, third, fourth, and tenth points presented by the counsel for the appellants, which we do not think are sustained by the law of this case; and they are therefore answered in the negative. 3, 4, 5, 6, 12.

In respect to the fifth point raised by the appellants' counsel, namely, that the father of Sarah Emma Wolford having acquired property in Allegheny county subsequent to his departure from Donegal township, the settlement of the father was communicated to the daughter:—We think the position thus maintained by appellants' counsel would be good, first, if the said Andrew Wolford had continued to be the head of his family (Burrell Twp. v. Pittsburg, 62 Pa. 474, 1 Am. Rep. 441); and second, if the father, as such head of the family, had acquired a legal settlement elsewhere than in Donegal township prior to the daughter attaining her legal majority or emancipation from the family of her father.

But the testimony does not establish that fact. Coupled with the fact of ownership of land there must have been an actual residence upon it for one whole year at least. Montoursville v. Fairfield Twp. 112 Pa. 99, 3 Atl. 862.

If it was otherwise and the mere fact of ownership of real estate could confer settlement, then a man would be entitled to a settlement in every township and district in which he might own real estate. Accordingly, we decline to affirm the appellants' fifth point; (7) and in refusing the appellants' fifth point we affirm the converse position of the defendants' (or appellees') third point.

The appellants' sixth point requires us to find that Andrew Wolford had a settlement in Shaler township, Allegheny county, by virtue of the payment of taxes in that township in 1881, and subsequently.

This would be some three years after she, Sarah Emma, had attained her majority. There is no evidence that she had ac-

companied her father to that township, by which act a derivative settlement after majority might have been acquired. And although there was a legal separation at some time between the mother and father, yet that could not sever the relation between the father and daughter, and he must be regarded still as the father, and was capable of communicating a legal settlement to his daughter, unless she had become insane before attaining her majority. Montoursville v. Fairfield Twp. 112 Pa. 99, 3 Atl. 862.

The settlement of the father is, therefore, the settlement of the child until it becomes of age or emancipated. Montoursville v. Fairfield Twp. 112 Pa. 99, 3 Atl. 862; Washington v. Beaver, 3 Watts & S. 549; Lewis v. Turbut, 15 Pa. 146; Washington Twp. v. East Franklin Twp. 3 Pennyp. 109.

We decline, therefore, under the facts of this case to sustain the appellants' sixth point (8). And as we do not think the pauper ever acquired a legal settlement in Shaler township, we refuse the eighth point of appellants (10).

The appellants (or plaintiffs) in this case do not seem to contend as to the fact of the settlement of the child following that of the father, nor to insist or even assert that she derived a derivative settlement from the mother; although the line of examination of the witnesses suggests that purpose. In fact, the eleventh point of plaintiffs wholly negatives the purpose of showing that she ever was emancipated so as to relieve the father.

However that may be, we have found that when she came of age there is no evidence binding to show that she was chargeable upon Shaler township. The father had, at that time, it is true, acquired property in that township; but the evidence does not show that he had secured a settlement in Shaler township.

It might have been possible that Mrs. Devinney, after her divorce from Wolford, acquired a settlement in Washington township, Armstrong county, or Fairview, Butler county, before her marriage with Devinney; but the evidence, although showing that she was Mrs. Devinney, does not disclose how long she had been married to Devinney.

And while we think that she, Sarah Emma, was of sound mind when she attained her majority, and unless she remained with her father's family she was emancipated and could by her own acts have acquired a settlement elsewhere than she had ac-quired at her birth, yet the evidence does not sufficiently show

that she did so.   The eleventh point of the plaintiffs is therefore refused.

The seventh and ninth points remain to be considered, which are as follows:

Seventh point.   There is no sufficient evidence that Sarah Emma Wolford ever acquired a settlement in Donegal township.

Ninth point.   Under all the evidence in this case the appeal of the Donegal township overseers should be sustained.

The conclusion is unavoidable that Andrew Wolford and his wife, at the birth of Sarah Emma, were legally settled in Donegal township, Butler county, and therefore we negative the seventh point, because that settlement at once constitutes the settlement of the child. 9.

Did she acquire another settlement, either by her own acts after attaining her majority, or by virtue of the relation she bore to her mother?

The mother, it is true, after her separation from her first husband, was the owner of and actually lived on two tracts of land, neither of which was in Donegal township; and in each case her residence was sufficiently long if she had come within the ruling of the case of Williamsport v. Eldred Twp. 84 Pa. 429, to have conferred settlement rights upon her.

[But it is not affirmatively shown that at the time she lived in either Fairview or Washington township she was then divorced from her first husband, or that she was not then married to Devinney, her second husband.] 13, 14.

And at this time, during the minority of the daughter, Sarah Emma, and in full accord with the position of the plaintiffs, the actual settlement of the father, if there was a change of settlement as to him from Donegal township, would be communicated to his child, Sarah Emma; if there was no change as to him and none is shown until 1881, then his legal settlement was in Donegal township, and the child's would also remain unchanged.

But the father seems to have withdrawn all parental care from the child after his separation from his wife, and the child thereafter continued with the mother.   The mother, however, removed and came into Armstrong county where she lived with her husband, Devinney, and the child, the pauper.

By becoming a member of the stepfather's family the same settlement rights did not attach to the child that did to the mother.   The mother by virtue of the marriage derived a new settle-

ment if her husband then had one. She took his. But by reason of merely residing in the family the child took none. She must come within some of the provisions of the statute confirming the right of settlement. The mere residence in her stepfather's family, unless under a contract for wages, could not be regarded as sufficient. Moreland Twp. v. Davidson Twp. 71 Pa. 376.

No such contract relation has been shown to have existed. The mother has testified that she worked out some. How much of her time and where is not stated; that is too vague and indefinite to establish a settlement by virtue of service.

The mere residence with her stepfather, it has been determined, confers no right of settlement. School Directors v. James, 2 Watts & S. 570, 37 Am. Dec. 525; Wayne Twp. v. Jersey Shore, 81* Pa. 264; and Northumberland v. Milton, 6 Sad. Rep. 503.

In the latter case all the authorities are exhausted by ROCKE-FELLER, P. J., and his conclusions affirmed by the supreme court. There are, however, features in the present case somewhat within the ruling of the recent case of Parker v. DuBois, 6 Sad. Rep. 591.

But in the case last cited the husband (the pauper's father) never lived in Pennsylvania. The mother acquired an actual settlement by her own acts, and it was held that the son derived a settlement through his mother. He never had one in the state through his father, who was never domiciled in the state.

In the present case the father was domiciled in the state, acquired a settlement in the state, always remained here, and, whether his settlement changed or not, his primary liability for support of his family followed him. By virtue of his settlement his daughter, Sarah Emma, acquired an actual settlement, which was not the fact in the Parker City Case.

The overseers of Sugarcreek having succeeded in establishing the fact of the original settlement of the pauper in Donegal township, we think the burden then was cast upon the plaintiff to show affirmatively that that original settlement was lost, either by removal of the pauper from the state and the acquisition of an extra state settlement, or by showing that she had acquired a new settlement in some other district in the state. This has not been done. 11.

And now, August 29, 1887, all the points of the plaintiffs inconsistent with this opinion are refused; and all the points of the

defendants, appellees, consistent with this opinion are sustained; all others refused.

And we further find that [Donegal township, Butler county, was the place of last legal settlement of said Sarah Emma Wolford] 2 and chargeable with the costs of her maintenance and support and the costs of this proceeding.   [The order of removal is sustained and the appeal dismissed.] 15

The assignments of error specified: 1.  The action of the court in finding that it had jurisdiction; 2, 13, 14, 15, the findings of law and fact inclosed in brackets; and 3-12, the refusal of the appellants' points.

*M. B. McBride* and *W. D. Patton,* for plaintiffs in error.— The quarter sessions of Armstrong county had no jurisdiction of this controversy.   The pauper, being a lunatic and confined at Dixmont, was not and could not be delivered with the order of removal.   She has not been delivered to Donegal township up to this day.   Could the appellees proceed under sections 16, 17, and 18 of the act of June 13, 1836 (Purdon's Digest, pp. 1435–6, pl. 39–41) ? The proceedings under these sections contemplate physical and bodily removal.   Section 16 says the warrant shall direct the overseers to "remove such person."   Section 17 provides that it shall not be lawful "to separate any wife from her husband."   Section 18 makes it the duty of the overseers of the district to which the pauper is removed "to receive such poor person" and provides a penalty for not accepting the pauper. When the pauper could neither be removed nor received this act does not apply.

This proceeding should have been brought, under section 23 of the act of June 13, 1836 (Purdon's Digest, p. 1349, pl. 59), in the court of quarter sessions of Butler county.   Proceedings might have been had under the act of April 14, 1845, § 11 (Purdon's Digest, p. 1116, pl. 57), or by an action of assumpsit in the court of common pleas of Butler county.

Section 23, act of June, 1836, provides a remedy if any poor person shall fall sick or die so that he cannot be removed.   The act is silent as to whether it is mental sickness or disease of the body.

In either case, if the pauper cannot be removed the proceedings must be by petition, and not by removal,—in this case not by order of removal from Armstrong county, but by petition in

the court of quarter sessions of Butler county. Versailles v. Mifflin, 10 Watts, 360; Marion Twp. v. Spring Twp. 50 Pa. 308.

In the case of Renovo v. Half-Moon, 78 Pa. 301, the proceedings were under section 23 of the act of 1836. The pauper was insane and could not be removed. The proceeding was in the quarter sessions of the district to which the pauper was removed. Had there been a demand set forth in the proceedings they would have been sustained.

*Buffington & Buffington,* for defendants in error.—This is not a case under section 23 of the act of 1836, when a "person shall come out of any city or district in this commonwealth into any other district and shall happen to fall sick or die." The pauper had been a charge on Sugarcreek township for two years. The proper course was to have an order of removal to Donegal township, for she had been placed in their charge by an order of relief. Prudence and humane counsels suggested that the order be taken and served, and the overseers of Donegal township informed that she could not be removed. This was done. They made no objection on the ground of nondelivery, but refused to accept the order because they denied the settlement. Nor did they ever raise the question of nondelivery until the argument of the case. It was then too late. Having selected their forum they cannot raise the question of jurisdiction.

Emma Wolford became of age in 1878; being then and for some years afterwards of sound mind she was emancipated from her father. Montoursville v. Fairfield Twp. 112 Pa. 105, 3 Atl. 862.

She then had a settlement gained by her birth in Donegal township.

Opinion by Mr. Justice Sterrett:

The learned president of the quarter sessions was clearly right in finding the last place of legal settlement of Sarah Emma Wolford was in Donegal township, Butler county. All that can be profitably said on that subject will be found in his opinion.

But, assuming the correctness of that finding, it is further contended that the court had no jurisdiction, because the pauper in

question had been previously committed to Dixmont Insane Asylum by defendants in error and has been there kept and maintained by them ever since; that their remedy, if they have any, is by proceeding under the 23d section of the act of June 13, 1836, and not under the 16th and 18th sections of the same act.

We cannot assent to this proposition. The 23d section was intended to provide for cases of sudden emergency, sudden sickness, injury, or death and the like, and not for cases such as the one under considerations. While a strictly literal reading of the 16th and 18th sections may appear to favor the idea of actual removal and acceptance of the pauper, the spirit of the act gives it a much wider scope. In cases like the present, where actual removal of the pauper is impracticable and unnecessary, a constructive transfer from one district to the other, by delivery of the order of removal, is sufficient to meet all the requirements of the act in that regard. It does not appear that either the physical or mental condition of the pauper was such as to have permitted her actual removal from the asylum and delivery to plaintiffs in error; but, under the circumstances disclosed by the evidence, such a useless formality would have been inhuman and unnecessarily expensive to plaintiffs in error. Their refusal to honor the order of removal by assuming charge of the pauper was not based on her nondelivery to them in person but because they denied that her last place of legal settlement was in their poor district. The purely technical objection to the form of proceeding was an afterthought.

It is unnecessary to notice, separately, each of the specifications of error. There is nothing in any of them that calls for a reversal of the order complained of.

The order of the court below is affirmed, with costs to be paid by plaintiffs in error.